# EXHIBIT A

ROCKY MOUNTAIN RECOVERY SYSTEMS, INC.
400 East 1st St. Ste. 312
Casper, WY 82601

# ACCOUNT SERVICE AND ASSIGNMENT AGREEMENT

THIS AGREEMENT is made and entered into on the 2nd day of October, 2013, by and between Rocky Mountain Recovery Systems, Inc., a Wyoming corporation, hereinafter referred to as "RMRSI," and Laramie Vision Clinic, hereinafter referred to as "Client."

Whereas, Client has unpaid and delinquent accounts which it desires collection services on; and,

Whereas, RMRSI is a third party service provider for its clients, and is willing to provide such services on Client's accounts;

Now therefore, the parties hereto agree as follows:

1. RMRSI agrees to accept for recovery services, unpaid accounts which Client shall refer to RMRSI. All accounts referred to RMRSI will be deemed, and hereby are, assigned, transferred, and set over to RMRSI for its services. And RMRSI shall have full authority to make demand on, recover, collect, sue in RMRSI's name, forward to other agencies, and receive all amounts due, or which may become due on said accounts. Further, RMRSI is hereby given authority to receive payment in cash, check, money order, or other negotiable instrument, and authority to endorse the same on behalf of Client for deposit into RMRSI's trust account and otherwise distribute such funds. When Client transfers an account to RMRSI through mail, through fax, through electronic means, through hand delivery, or through any other means; the same shall be deemed assigned until collected or reassigned by RMRSI. In addition, the amount shown on the Client acknowledgment shall be deemed the assigned face value of each account.

2. RMRSI shall promptly undertake, through proper and lawful means, the collections of the accounts referred by Client. RMRSI does, and shall, comply with the rules and regulations established in public law 95-109 known as the Fair Debt Collection Practices Act.

3. RMRSI is an independent contractor, licensed and bonded, and is solely responsible for the employment, acts and omissions, control and direction of its employees. RMRSI shall indemnify and hold Client harmless from any and all claims, demands or causes of action that may be asserted due to collection activities by RMRSI on accounts referred by Client. This does <u>not</u> include cross-claims or causes of action that are independent of the collection activities of RMRSI (such as malpractice claims or other claims against Client) and Client shall indemnify and hold RMRSI harmless from any such claims.

4. Referral and transfer of accounts to RMRSI shall be at the option of Client and Client hereby warrants that all accounts assigned to RMRSI are valid and legally enforceable debts, which the names and amounts listed, are correct to the best of the Clients' knowledge and belief, and that Client has ceased all collection activity on assigned accounts. Further, the Client has and will, both before and after forwarding said accounts, comply with all applicable federal, state and local laws with respect thereto. Client agrees to forward to RMRSI a copy of all debtor documentation regarding any referred account. Examples of pertinent documentation include: most recent billing statement, copy of all agreements and contracts with debtor, debtor information forms, anything signed by debtor establishing fees, interest rates, and other obligations, guarantor status or any family information.

5. RMRSI shall maintain for all accounts, records which will reflect the original balance, additional charges, payments or credits, court costs and attorney's fees. Client shall have the right to inspect such records of its accounts by giving RMRSI a written request listing the accounts it desires to review. RMRSI will generally provide access to these records within seven days of any request. If records on more than ten accounts are requested, more time will be given to RMRSI.

6. RMRSI shall prepare an itemized statement of all payments made during a remittance period (a calendar month). RMRSI shall remit to Client a net statement on or about the 15th calendar day of each month following the preceding month.

7. Client agrees to promptly notify RMRSI of all direct payments, bankruptcy notices, and any communication from the debtor or any representative of the debtor to RMRSI. Direct payments are payments made by the debtor directly to the Client for accounts that have been assigned to RMRSI for collections.

8. RMRSI shall advance all court costs and attorney fees in case of litigation or post-judgment enforcement. RMRSI shall be reimbursed for advanced costs from the first monies collected from the debtor. RMRSI and/or RMRSI's attorney shall retain all court costs, service fees, interest accrued following assignment, and attorney fees collected.

9. On any account for which the Client determine the obligation of the debtor(s) shall be forgiven, and upon notification by Client, RMRSI agrees to suspend action, either temporarily or permanently (at the Client's discretion), on such accounts referred for collection. RMRSI has the right at its discretion, to enforce a minimum $15.00 service charge or 10%, whichever is greater, on any account withdrawn. RMRSI agrees to cancel and return accounts referred for collection after receipt of a written request listing the accounts in alphabetical order and current balances must be included. Accounts in process of collection by RMRSI or an affiliated collection agent will be returned within 90 days of notice. If RMRSI anticipates receiving payment within 90 days, the account will remain with RMRSI for collection. Notwithstanding anything else said herein, accounts for which RMRSI has begun legal process will be individually considered for

cancellation and returned at the sole discretion of RMRSI. In most cases, if accounts in legal process are returned, they will be treated as direct payments to the Client and RMRSI will offset RMRSI's portion from future payments to the Client. RMRSI may cancel and return any account to Client at any time. Client will be given written notice for accounts which are cancelled and returned.

10. RMRSI shall not accept any compromise settlement that will affect the amount of the Client's share of payment without the prior approval of Client.

11. Any noncompliance by either party with the terms hereof shall be a default which must be corrected immediately upon receipt of notice from the other party.

12. This Agreement shall commence on the day first above written and run for one (1) year from that date. This Agreement will automatically renew and continue thereafter from year to year unless cancelled by either party by giving the other party written notice of the cancellation at least thirty (30) days before cancellation.

13. This Agreement contains the entire understanding between the parties and shall not be modified in any manner except by an instrument in writing executed by the parties.

14. In addition to all other amounts hereinbefore listed, RMRSI shall receive for their services, on all accounts, the contingency share of the face amount assigned at the following rates (the higher percent as, and when, any listed expression pertains to the account):

- Accounts where a legal process has not initiated: **35%**
- Accounts when a legal process has begun: **40%**

IN WITNESS WHEREOF, the parties have duly executed this Agreement to be effective on the day and year first above written.

By: *Dan Wilkerson*
RMRSI Representative

By: ______________________
Client Signature

**ROCKY MOUNTAIN RECOVERY SYSTEMS, INC.**
400 East 1st St. Ste. 312
Casper, WY 82601

# ACCOUNT SERVICE AND ASSIGNMENT AGREEMENT

THIS AGREEMENT is made and entered into this 25 day of April, year 2014 by and between Rocky Mountain Recovery Systems, Inc., a Wyoming Corporation, hereinafter referred to as "RMRSI," and University of Wyoming Family Practice Program-Casper hereinafter referred to as "Client."

Whereas, Client has unpaid and delinquent accounts which it desires collection services on; and,

Whereas, RMRSI is a third party service provider for its clients, and is willing to provide such services on Client's accounts;

Now therefore, the parties hereto agree as follows:

1. RMRSI agrees to accept for recovery services, unpaid accounts which Client shall refer to RMRSI. All accounts referred to RMRSI will be deemed, and hereby are assigned, transferred and set over to RMRSI for its services and RMRSI shall have full authority to make demand on, recover, collect, sue in RMRSI's name, forward to other agencies, and receive all amounts due, or which may become due on said accounts, Further RMRSI is hereby given authority to receive payment in cash, check, money order, or other negotiable instrument, and authority to endorse the same on behalf of Client for deposit into RMRSI's trust account and otherwise distribute such funds. Transfer of accounts from a previous credit agency or to another credit agency in the event of cancellation of this contract shall be done without charge. When Client makes physical delivery of an Account to RMRSI the same shall be deemed assigned until collected or reassigned by RMRSI. The date of physical delivery will be shown on the Client acknowledgment. In addition, the amount shown on the Client acknowledgment shall be deemed the assigned face value of each account.

2. RMRSI shall promptly undertake, through proper and lawful means, the collections of the accounts referred by Client. RMRSI does, and shall, comply with the rules and regulations established in public law 95-109 known as the Fair Debt Collection Practices Act.

3. RMRSI is an independent contractor, licensed and bonded, and is solely responsible for the employment, acts and omissions, control and direction of its employees. RMRSI shall indemnify and hold Client harmless from any and all claims, demands or causes of action that may be asserted due to collection activities by RMRSI on accounts referred by Client. This does not include cross-claims or causes of action that are independent of the collection activities of RMRSI (such as malpractice claims) or other claims against Client

and to the extent permitted by Wyoming law Client shall indemnify and hold RMRSI harmless from any such causes of action independent of the collection activities of RMRSI.

4. Referral and transfer of accounts to RMRSI shall be at the option of Client and Client hereby warrants that all accounts assigned to RMRSI are valid and legally enforceable debts, which the names and amounts listed, are correct to the best of the Clients' knowledge and belief, and that Client has ceased all collection activity on assigned accounts. Further, the Client has and will, both before and after forwarding said accounts, comply with all applicable federal, state and local laws with respect thereto. Client agrees to forward to RMRSI a copy of all debtor documentation regarding any referred account. Examples of pertinent documentation include: most recent billing statement, copy of all agreements and contracts with debtor, debtor information forms, anything signed by debtor establishing fees, and other obligations, guarantor status or any family information.

5. RMRSI shall maintain for all accounts, records which will reflect the original balance, additional charges, payments or credits, court costs and attorney's fees. Client shall have the right to inspect such records of its accounts by giving RMRSI a written request listing the accounts it desires to review. RMRSI will generally provide written access to these records within two days of any request. If records on more than ten accounts are requested, more time will be given to RMRSI. RMRSI shall provide a login and password for immediate access to accounts of Client's through the internet.

6. RMRSI shall prepare an itemized statement of all payments made during a remittance period (a calendar month). RMRSI shall remit to Client a net statement and payment not later than the $15^{th}$calendar day of each month following the preceding month.

7. Client agrees to promptly notify RMRSI of all direct payments, bankruptcy notices, and any communication from the debtor or any representative of the debtor to RMRSI. Direct payments are payments made by the debtor directly to the Client for accounts that have been assigned to RMRSI for collections.

8. RMRSI shall advance all court costs and attorney fees in case of litigation or post-judgment enforcement. RMRSI shall be reimbursed for advanced costs from the first monies collected from the debtor. RMRSI and/or RMRSI's attorney shall retain all court costs, service fees, interest accrued, and attorney fees collected.

9. On any account for which the Client determine the obligation of the debtor(s) shall be forgiven, and upon notification by Client, RMRSI agrees to suspend action, either temporarily or permanently (at the Client's discretion), on such accounts referred for collection. RMRSI agrees to cancel and return accounts referred for collection after receipt of a written request listing the accounts in alphabetical order and current balances must be included. RMRSI and Client may cancel and return any account for return to

Client at any time without fees. Client will be given written notice for accounts which are cancelled and returned.

10. RMRSI shall not accept any compromise settlement that will affect the amount of the Client's share of payment without the prior written approval of Client.

11. Any noncompliance by either party with the terms hereof shall be a default which must be corrected immediately upon receipt of notice from the other party within 10 days.

12. This Agreement shall commence on the day first above written and run for one (1) year from that date. This Agreement will automatically renew and continue thereafter from year to year unless cancelled by either party by giving the other party written notice of the cancellation at least thirty (30) days before cancellation.

13. This Agreement contains the entire understanding between the parties and shall not be modified in any manner except by an instrument in writing executed by the parties.

14. In addition to all other amounts hereinbefore listed, RMRSI shall receive for their services, on all accounts, the contingency share of the face amount assigned at the following rates (the higher percent as, and when, any listed expression pertains to the account):

| | | |
|---|---|---|
| >> | **Accounts assigned prior to any legal action** | **35%** |
| >> | **Accounts when legal process begins:** | **40%** |
| >> | **Accounts sent out of state** | **50%** |

15. RMRSI shall ensure that it and all personnel maintain confidentiality of all patient records, charts and other patient identifying information in accordance with state and federal laws, including the Health Insurance Portability and Accountability Act of 1996 and regulations promulgated thereunder, as amended from time to time (collectively, "HIPAA"). RMRSI shall ensure that it and its personnel implement and use appropriate safeguards to prevent any unauthorized use or unlawful disclosure of PHI, take appropriate action to ensure that other persons appropriately safeguard and use PHI, report any known improper disclosure or use of PHI, and return or destroy all PHI upon the termination of this Agreement for any reason. Further, RMRSI agrees to execute and abide by the terms of the Business Associate Agreement and agrees to abide by all the terms of the agreement because it may be dealing with Protected Health Information. RMRSI also agrees to indemnify and hold Client harmless for any and all claims due to breach of Protected Health Information by RMRSI, its employees or staff, its information equipment or any other source.

16. Without prior written consent of the other party, neither party may assign this Agreement. This Agreement shall inure to the benefit of, and be binding upon, permitted successors and assigns of the parties.

17. The construction, interpretation and enforcement of this Agreement shall be governed by the laws of the State of Wyoming. The courts of the State of Wyoming shall have jurisdiction

over any action arising out of this Agreement and over the parties, and the venue shall be the Second Judicial District, Albany County, Wyoming.

18. The University does not waive its sovereign or governmental immunity by entering into this Agreement, and fully retains all immunities and defenses provided by law with respect to any action based on or occurring as a result of this Agreement. Any actions or claims against the University under this Agreement must be in accordance with and are controlled by the Wyoming Governmental Claims Act, W.S. 1-39-101 et seq. (1977) as amended.

IN WITNESS WHEREOF, the parties have duly executed this Agreement to be effective on the day and year first above written.

ROCKY MOUNTAIN RECOVERY

By: Elizabeth Hodge 5-7-14 By: [signature]
Rocky Mountain Recovery Client Services
Client

**CLIENT INFORMATION SHEET**

**DATE:**________________

**CLIENT NAME:**________________________________________.

**ADDRESS:**______________________________________________________________
(STREET) (CITY) (STATE) (ZIP)

**MAILING ADDRESS:**______________________________________________________
(STREET) (CITY) (STATE) (ZIP)

**TELEPHONE:**__________________ **FAX:**____________________

**EMAIL:**________________________________________

**PRIMARY CONTACT/TITLE:**_____________________________________________

**SECONDARY CONTACT/TITLE:**___________________________________________

**LEGAL AFFIANT/TITLE:**________________________________________________

**TYPE OF BUSINESS:**___________________________________________________

**ADDITIONAL INFORMATION:**

EXHIBIT P.1

**ROCKY MOUNTAIN RECOVERY**
400 E. 1st St., Suite 312
Casper, WY 82716

# ACCOUNT SERVICE AND ASSIGNMENT AGREEMENT

THIS AGREEMENT is made and entered into this 1st day of October, 2009, by and between Rocky Mountain Recovery, a Wyoming Corporation, hereinafter referred to as "RMR," and Wyoming Otolaryngology PC, hereinafter referred to as "Client."

Whereas, Client has unpaid and delinquent accounts which it desires collection services on; and,

Whereas, RMR serves as an agent for collections for clients, and is willing to provide such services on Client's accounts;

Now therefore, the parties hereto agree as follows:

1. RMR agrees to accept for collection unpaid accounts which Client refers for collection. All accounts referred to RMR will be deemed, and hereby are assigned, transferred and set over to RMR for collection and RMR shall have full authority to make demand on, collect, sue in RMR's name, forward to other agencies, and receive all amounts due, or which may become due on said accounts, Further RMR is hereby given authority to receive payment in cash, check. money order. or other negotiable instrument.

assigned until collected or reassigned by RMR. The date of physical delivery will be shown on the Client acknowledgment. In addition, the amount shown on the Client acknowledgment shall be deemed the assigned face value of each account.

2. RMR shall promptly undertake, through proper and lawful means, the collections of the accounts referred by Client. RMR does, and shall, comply with the rules and regulations

3. RMR is an independent contractor, licensed and bonded, and is solely responsible for the employment, acts and omissions, control and direction of its employees. RMR shall indemnify and hold Client harmless from any and all claims, demands or causes of action that may be asserted due to collection activities by RMR on accounts referred by Client. This does not include counter-claims or causes of action that are independent of the collection activities of RMR (such as malpractice claims) or other claims against Client and Client shall indemnify and hold RMR harmless from any such claims.

4. Referral and transfer of accounts to RMR shall be at the option of Client and Client hereby warrants that all accounts assigned to RMR are valid and legally enforceable debts, that the names and amounts listed are correct to the best of the Clients's knowledge and belief, and that Client has ceased all collection activity on assigned accounts. Further, the Client has and will, both before and after forwarding said accounts, comply with all applicable federal, state and local laws with respect thereto. Client agrees to forward to RMR a copy of all debtor documentation regarding any referred account. Examples of pertinent documentation include: most recent billing statement, copy of all agreements and contracts with debtor, debtor information forms, anything signed by debtor establishing fees, interest rates, and other obligations, guarantor status or any family relationship.

5. RMR shall maintain for all accounts, records which will reflect the original balance, additional charges, payments or credits, court costs and attorney's fees. Client shall have the right to inspect such records of its accounts by giving RMR a written request listing the accounts it desires to review. RMR will generally provide access to these records within seven days of any request. If records on more than ten accounts are requested, more time will be given to RMR.

6. RMR shall prepare an itemized statement of all payments made during a remittance period (a calender month). RMR shall remit to Client a net statement on or about the 15th calender day of each month following the preceding month.

7. Client agrees to promptly notify RMR of all direct payments, bankruptcy notices, and any communication from the debtor or any representative of the debtor to RMR. Direct payments are payments made by the debtor directly to the Client for accounts that have been assigned to RMR for collections.

8. RMR shall advance all court costs and attorney fees in case of litigation or post-judgment enforcement. RMR shall be reimbursed for advanced costs from the first monies collected from the debtor. RMR and/or RMR's attorney shall retain all court costs, service fees, interest accrued following assignment, and attorney fees collected.

9. On account for which the Client has determined the obligation of the debtor(s) shall be forgiven, and upon notification by Client, RMR agrees to suspend action, either temporarily or permanently (at the Client's discretion), on such accounts referred for collection. RMR has the right at its discretion, to enforce a minimum $5.00 service charge or 10%, whichever is greater, on any account withdrawn. RMR agrees to cancel and return accounts referred for collection after receipt of a written request listing the accounts in alphabetical order and current balances must be included. Accounts in process of collection by RMR or an affiliated collection agent will be returned within 90 days of notice. If RMR anticipates receiving payment within 90 days, the account will remain with RMR for collection. Not withstanding anything else said herein, accounts for which RMR has began legal process will be individually considered for cancellation and return at the soled discretion of RMR. In most cases, if accounts in legal process are returned, they will be treated as direct payments to the Client and RMR will offset RMR's portion from future payments to the

Client. RMR may cancel and return any account to Client at any time. Client will be given written notice for accounts which are cancelled and returned.

10. RMR shall not accept any compromise settlement that will affect the amount of the Client's share of payment without the prior approval of Client.

11. Any noncompliance by either party with the terms hereof shall be a default which must be corrected immediately upon receipt of notice from the other party.

12. This Agreement shall commence on the day first above written and run for one (1) year from that date. This Agreement will automatically renew and continue thereafter from year to year unless cancelled by either party by giving the other party written notice of the cancellation at least thirty (30) days before cancellation.

13. This Agreement contains the entire understanding between the parties and shall not be modified in any manner except by an instrument in writing executed by the parties.

14. In addition to all other amounts hereinbefore listed, RMR shall receive for their services, on all accounts, the contingency share of the face amount assigned at the following rates (the higher percent as, and when, any listed expression pertains to the account):

| | | |
|---|---|---|
| >> | Accounts assigned within 120 days of last payment activity which have signed agreement providing for attorney fees: | **35%** |
| >> | Accounts with signed agreement where last payment activity over 120 days: | **40%** |
| >> | Accounts assigned within 120 days of last payment activity without signed agreement: | **40%** |
| >> | Accounts without signed agreement where last payment activity over 120 days: | **50%** |
| >> | Accounts with the face amount under $150.00: | **50%** |
| >> | Accounts without signed agreement when legal process begins: | **50%** |
| >> | Accounts forwarded out of state: | **50%** |

IN WITNESS WHEREOF, the parties have duly executed this Agreement to be effective on the day and year first above written.

ROCKY MOUNTAIN RECOVERY

By: [signature]
Representative
Christine Davenport

CLIENT:

By: [signature]
Office Manager 10.1.09
Sheila Elliott

EXHIBIT 2

ROCKY MOUNTAIN RECOVERY
400 E. 1st St., Suite 312
Casper, WY ~~82716~~ 82601

# ACCOUNT SERVICE AND ASSIGNMENT AGREEMENT

THIS AGREEMENT is made and entered into this 14TH day of August, 2009, by and between Rocky Mountain Recovery, a Wyoming Corporation, hereinafter referred to as "RMR," and Wyoming Surgical Associates PC, 419 S Washington Suite #102 Casper, WY 82601, hereinafter referred to as "Client."

Whereas, Client has unpaid and delinquent accounts which it desires collection services on; and,

Whereas, RMR serves as an agent for collections for clients, and is willing to provide such services on Client's accounts;

Now therefore, the parties hereto agree as follows:

1. RMR agrees to accept for collection unpaid accounts which Client refers for collection. All accounts referred to RMR will be deemed, and hereby are assigned, transferred and set over to RMR for collection and RMR shall have full authority to make demand on, collect, sue in RMR's name, forward to other agencies, and receive all amounts due, or which may become due on said accounts, Further RMR is hereby given authority to receive payment in cash, check, money order, or other negotiable instrument, and authority to endorse the same on behalf of Client for deposit into RMR's trust account and otherwise distribute such funds. When Client makes physical delivery of an Account to RMR the same shall be deemed assigned until collected or reassigned by RMR. The date of physical delivery will be shown on the Client acknowledgment. In addition, the amount shown on the Client acknowledgment shall be deemed the assigned face value of each account.

2. RMR shall promptly undertake, through proper and lawful means, the collections of the accounts referred by Client. RMR does, and shall, comply with the rules and regulations established in public law 95-109 known as the Fair Debt Collection Practices Act.

3. RMR is an independent contractor, licensed and bonded, and is solely responsible for the employment, acts and omissions, control and direction of its employees. RMR shall indemnify and hold Client harmless from any and all claims, demands or causes of action that may be asserted due to collection activities by RMR on accounts referred by Client. This does not include counter-claims or causes of action that are independent of the collection activities of RMR (such as malpractice claims) or other claims against Client and Client shall indemnify and hold RMR harmless from any such claims.

4. Referral and transfer of accounts to RMR shall be at the option of Client and Client hereby warrants that all accounts assigned to RMR are valid and legally enforceable debts, that the names and amounts listed are correct to the best of the Clients's knowledge and belief, and that Client has ceased all collection activity on assigned accounts. Further, the Client has and will, both before and after forwarding said accounts, comply with all applicable federal, state and local laws with respect thereto. Client agrees to forward to RMR a copy of all debtor documentation regarding any referred account. Examples of pertinent documentation include: most recent billing statement, copy of all agreements and contracts with debtor, debtor information forms, anything signed by debtor establishing fees, interest rates, and other obligations, guarantor status or any family relationship.

5. RMR shall maintain for all accounts, records which will reflect the original balance, additional charges, payments or credits, court costs and attorney's fees. Client shall have the right to inspect such records of its accounts by giving RMR a written request listing the accounts it desires to review. RMR will generally provide access to these records within seven days of any request. If records on more than ten accounts are requested, more time will be given to RMR.

6. RMR shall prepare an itemized statement of all payments made during a remittance period (a calender month). RMR shall remit to Client a net statement on or about the 15th calender day of each month following the preceding month.

7. Client agrees to promptly notify RMR of all direct payments, bankruptcy notices, and any communication from the debtor or any representative of the debtor to RMR. Direct payments are payments made by the debtor directly to the Client for accounts that have been assigned to RMR for collections.

8. RMR shall advance all court costs and attorney fees in case of litigation or post-judgment enforcement. RMR shall be reimbursed for advanced costs from the first monies collected from the debtor. RMR and/or RMR's attorney shall retain all court costs, service fees, interest accrued following assignment, and attorney fees collected.

9. On account for which the Client has determined the obligation of the debtor(s) shall be forgiven, and upon notification by Client, RMR agrees to suspend action, either temporarily or permanently (at the Client's discretion), on such accounts referred for collection. RMR has the right at its discretion, to enforce a minimum $5.00 service charge or 10%, whichever is greater, on any account withdrawn. RMR agrees to cancel and return accounts referred for collection after receipt of a written request listing the accounts in alphabetical order and current balances must be included. Accounts in process of collection by RMR or an affiliated collection agent will be returned within 90 days of notice. If RMR anticipates receiving payment within 90 days, the account will remain with RMR for collection. Not withstanding anything else said herein, accounts for which RMR has began legal process will be individually considered for cancellation and return at the soled discretion of RMR.

In most cases, if accounts in legal process are returned, they will be treated as direct payments to the Client and RMR will offset RMR's portion from future payments to the Client. RMR may cancel and return any account to Client at any time. Client will be given written notice for accounts which are cancelled and returned.

10. RMR shall not accept any compromise settlement that will affect the amount of the Client's share of payment without the prior approval of Client.

11. Any noncompliance by either party with the terms hereof shall be a default which must be corrected immediately upon receipt of notice from the other party.

12. This Agreement shall commence on the day first above written and run for one (1) year from that date. This Agreement will automatically renew and continue thereafter from year to year unless cancelled by either party by giving the other party written notice of the cancellation at least thirty (30) days before cancellation.

13. This Agreement contains the entire understanding between the parties and shall not be modified in any manner except by an instrument in writing executed by the parties.

14. In addition to all other amounts hereinbefore listed, RMR shall receive for their services, on all accounts, the contingency share of the face amount assigned at the following rates (the higher percent as, and when, any listed expression pertains to the account):

| | |
|---|---|
| >> Accounts assigned within 120 days of last payment activity which have signed agreement providing for attorney fees: | 35% |
| >> Accounts with signed agreement where last payment activity over 120 days: | ~~40%~~ 35% |
| >> Accounts assigned within 120 days of last payment activity without signed agreement: | ~~40%~~ 35% |
| >> Accounts without signed agreement where last payment activity over 120 days: | ~~50%~~ 35% |
| >> Accounts with the face amount under $150.00: | ~~50%~~ 35% |
| >> Accounts without signed agreement when legal process begins: | ~~50%~~ 35% |
| >> Accounts forwarded out of state: | ~~50%~~ 35% |

Things that go to legal will be at 40%

IN WITNESS WHEREOF, the parties have duly executed this Agreement to be effective on the day and year first above written.

ROCKY MOUNTAIN RECOVERY

By: [signature]
Representative

CLIENT: Wyoming Surgical Associates PC

By: [signature] Black, Practice Mgr
Name-
Title-