Kellie Nelson Fetter (Wyo. Bar No. 7-4597)
Scott M. Flaherty (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
675 Fifteenth Street, Suite 2300
Denver, Colorado 80202
Telephone: (303) 297-2900
Facsimile: (303) 298-0940
Email: kfetter@taftlaw.com
sflaherty@taftlaw.com

Tim Phillips (*pro hac vice*)
LAW OFFICE OF TIM PHILLIPS, PLLC
331 Second Avenue South, Suite 400
TriTech Center
Minneapolis, Minnesota 55401
Telephone: (612) 470-7179
Email: tim@timphillipslaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| ANTHONY WEBSTER, individually, and on behalf of all others similarly situated,<br>Plaintiff,<br>*v.*<br>ROCKY MOUNTAIN RECOVERY SYSTEMS, INC., WILKERSON & WILKERSON LLC d/b/a WILKERSON LAW GROUP, DANIEL B. WILKERSON, and WYOMING HEALTH FAIRS,<br>Defendants. | **Civil Action No. 2:25-CV-17-ABJ**<br>*ORAL ARGUMENT REQUESTED* |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO COLLECTOR DEFENDANTS' PARTIAL MOTION TO DISMISS**

## TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

**BACKGROUND** .......... **1**

**STANDARD OF DECISION** .......... **3**

**ARGUMENT** .......... **4**

I. Plaintiff has standing for claims against W&W and Wilkerson because they led the scheme to violate the rights of Plaintiff and thousands of others similarly situated .......... 4

II. Plaintiff does not need to pierce the corporate veil to pursue claims against the W&W Firm or Attorney Wilkerson—but they are on notice .......... 8

III. W&W and Wilkerson are "debt collectors" under the FDCPA .......... 9

IV. Unjust enrichment .......... 12

V. Negligence and negligence per se .......... 12

VI. Breach of contract and breach of the implied covenant of good faith and fair dealing .......... 14

VII. Fraud and fraudulent inducement .......... 16

VIII. Declaratory judgment .......... 17

IX. Wyoming Consumer Protection Act .......... 20

X. Wyoming Uniform Consumer Credit Code .......... 21

XI. Racketeer Influenced and Corrupt Organizations Act (RICO) violations .......... 23

**CONCLUSION** .......... **25**

## TABLE OF AUTHORITIES

### CASES

*Action Snowmobile & RV, Inc. v. Most Wanted Performance, LLC*,
423 P.3d 317 (Wyo. 2018) ........ 16

*Beneficial Loan Co. v. Noble*,
129 F.2d 425 (10th Cir. 1942) ........ 18

*Berry v. Tessman*,
170 P.3d 1243 (Wyo. 2007) ........ 13

*Brumbelow v. L. Offs. of Bennett & Deloney, P.C.*,
372 F.Supp.2d 615 (D. Utah 2005) ........ 12

*Chung v. Lamb*,
No. 14-CV-03244-WYD-KLM (D. Colo. Sept. 28, 2017) ........ 12

*Clinton v. Sec. Benefit Life Ins. Co.*,
63 F.4th 1264 (10th Cir. 2023) ........ 23

*Coleman v. Holecek*,
542 F. 2d 532 (10th Cir. 1976) ........ 16

*Cooper v. Stephen Bruce & Assocs.*,
No. CV-18-487-R, 2019 WL 97826 (W.D. Okla. Jan. 3, 2019) ........ 5

*Diamond Alternative Energy, LLC v. EPA*,
606 U.S. 100 (2025) ........ 5

*Distad v. Cubin*,
633 P.2d 167 (Wyo. 1981) ........ 13

*Dubbs v. Head Start, Inc.*,
336 F.3d 1194 (10th Cir. 2003) ........ 3

*Fernandez v. Clean House, LLC*,
883 F.3d 1296 (10th Cir. 2018) ........ 24

*George v. Urban Settlement Servs.*,
833 F.2d 1242 (10th Cir. 2016) ........ 24, 25

*Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*,
374 F.3d 56 (2d Cir. 2004) ........ 10

*Goodrich v. Seamands*,
870 P.2d 1061 (Wyo. 1994) ........ 13

*Green v. Branson*,
108 F.3d 1296 (10th Cir. 1997) ........ 17, 20

*Groundhog v. Keeler*,
442 F.2d 674 (10th Cir. 1971) ........ 4

*Heintz v. Jenkins*,
514 U.S. 291 (1995) .......... 10

*Iberlin v. TCI Cablevision of Wyoming, Inc.*,
855 P.2d 716 (Wyo. 1993) .......... 22

*Initiative & Referendum Inst. v. Walker*,
450 F.3d 1082 (10th Cir. 2006) .......... 4

*James v. James*,
2021 WY 96, 493 P.3d 1258 (Wyo. 2021) .......... 9

*James v. Wadas*,
724 F.3d 1312 (10th Cir. 2013),
& No. 11-CV-368-ABJ (D. Wyo. Sep. 13, 2012) .......... 10, 11, 12

*Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Service*,
921 F.Supp.2d 1137 (D.N.M., 2013) .......... 18

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*,
559 U.S. 573 (2010) .......... 10

*Johnson v. Riddle*,
305 F.3d 1107 (10th Cir. 2002) .......... 10

*Jones v. Central States Inv. Co.*,
654 P.2d 727 (Wyo. 1982) .......... 16

*Jordan v. Sosa*,
654 F.3d 1012 (10th Cir. 2011) .......... 19

*Jurkovich v. Estate of Tomlinson*,
843 P.2d 1166 (Wyo. 1992) .......... 16

*Ladick v. Van Gemert*,
146 F.3d 1205 (10th Cir. 1998) .......... 19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 4, 5

*Lupia v. Medicredit, Inc.*,
445 F. Supp. 3d 1271 (D. Colo. 2020),
8 F. 4th 1184 (10th Cir. 2021) .......... 5

*Miller by and through Travis v. Sweetwater Cnty. Sch. Dist. #1*,
2021 WY 134, 500 P.3d 242 (Wyo. 2021) .......... 12

*Miller v. Wolpoff & Abramson, L.L.P.*,
321 F.3d 292 (2d Cir. 2003) .......... 7

*Mostert v. CBL & Assocs.*,
741 P.2d 1090 (Wyo.1987) .......... 13

*Nicklas v. Pro. Assistance, LLC*,
No. 18-CV-0066-SWS, 2018 WL 8619646 (D. Wyo. 2018) .......... 20

*Niederquell v. Bank of America, NA*,
No. 11-cv-03185-MSK-MJW, 2012 WL 1578060 (D. Colo. May 4, 2012) .......................... 19

*Nova Health Sys. v. Gandy*,
416 F.3d 1149 (10th Cir. 2005) .............................................................................. 7

*Peterson v. Meritain Health, Inc.*,
508 P.3d 696 (Wyo. 2022) .................................................................................... 15

*Powell v. McCormack*,
395 U.S. 486, 518 (1969) ..................................................................................... 19

*Pullman v. Outzen*,
924 P.2d 416 (Wyo. 1996) .................................................................................... 13

*Rice v. Collins Commc'n, Inc.*,
236 P.3d 1009 (Wyo. 2010) .................................................................................. 13

*Rico v. Eveland*,
No. 2:18-CV-00644-JCB (D. Utah Dec. 17, 2020) ................................................. 12

*Ridgerunner, LLC v. Meisinger*,
2013 WY 31, 297 P.3d 110 (Wyo. 2013) ................................................................ 9

*Rio Grande Found. v. Oliver*,
57 F.4th 1147 (10th Cir. 2023) .............................................................................. 4

*Robbins v. Wilkie*,
300 F.3d 1208 (10th Cir. 2002) ............................................................................ 23

*Ruiz v. McDonnell*,
299 F. 3d 1173 (10th Cir. 2002) ............................................................................ 4

*Scherer Constr., LLC v. Hedquist Constr., Inc.*,
18 P.3d 645 (Wyo. 2001) ...................................................................................... 16

*Shields v. Pro. Bureau of Collections of Maryland, Inc.*,
55 F. 4th 823 (10th Cir. 2022) ............................................................................... 6

*Sosna v. Iowa*,
419 U.S. 393 (1975) ............................................................................................. 20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ............................................................................................... 5

*Sponsel v. Park County*,
126 P.3d 105 (Wyo. 2006) .................................................................................... 13

*Steffel v. Thompson*,
415 U.S. 452 (1974) ............................................................................................. 19

*Swike v. Med-1 Solutions, LLC*,
No. 1:17-cv-01503-JMS-MPB, 2017 WL 4099307 (S.D. Ind. Sept. 15, 2017) ......................... 5

*Tal v. Hogan*,
453 F.3d 1244 (10th Cir. 2006) ............................................................................ 24

*United States v. Colorado Supreme Ct.*,
87 F.3d 1161 (10th Cir. 1996) ........ 4

*United States v. Mashunkashey*,
72 F.2d 847 (10th Cir. 1934) ........ 18

*United States v. Texas*,
599 U.S. 670 (2023) ........ 5

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
775 F.Supp.2d 1316 (D. Wyo. 2011) ........ 12

*Vogel v. Onyx Acceptance Corp.*,
267 P.3d 1057 (Wyo. 2011) ........ 21

*Wallop Canyon Ranch, LLC v. Goodwyn*,
351 P.3d 943 (Wyo. 2015) ........ 8

*Warth v. Seldin*,
422 U.S. 490 (1975) ........ 4, 7

*White v. Shane Edeburn Constr., LLC*,
285 P.3d 949 (Wyo. 2012) ........ 16

*Williams v. Duke Energy Int'l, Inc.*,
681 F.3d 788 (6th Cir. 2012) ........ 25

*WyoLaw, LLC v. Office of Attorney General, Consumer Protection Unit*,
486 P.3d 964 (Wyo. 2021) ........ 21

**STATUTES**

15 U.S.C. § 1692a ........ 9, 10

15 U.S.C. § 1692c ........ 5

15 U.S.C. § 1692g ........ 5

Racketeer Influenced and Corrupt Organizations Act (RICO),
18 U.S.C. § 1961, et seq. ........ 23

Wyoming Collection Agency Act (WCAA),
Wyo. Stat. § 33-11-101, et seq. ........ 8, 13, 18

Wyoming Consumer Protection Act (WCPA),
Wyo. Stat. § 40-12-101, et seq. ........ 20

Wyoming Uniform Consumer Credit Code (WUCCC),
Wyo. Stat. § 40-14-101, et seq. ........ 21, 22, 23

**TREATISES**

Samuel Williston, 12 *Treatise on the Law of Contracts*
(Richard A. Lord ed., 4th ed. 2012) ........ 15

William Meade Fletcher, *3A Fletcher Cyc. Corp.* (perm. ed., rev. vol. 2011 and Cum Supp. 2014–2015) ..... 9

**OTHER AUTHORITIES**

The Commonwealth Fund, *Scorecard on State Health System Performance: Wyoming* ..... 1

**RULES**

Fed. R. Civ. P. 15(a) ..... 25

Fed. R. Civ. P. 8(a) ..... 9

Fed. R. Civ. P. 9(b) ..... 16, 23, 24

Wyoming Collection Agency Board Rules, Wyo. Admin. Code 031.0001.1 § 1, et seq. ..... 14

Wyoming Rules of Professional Conduct for Attorneys at Law ..... 13

## INTRODUCTION

In most consumer debt collection cases, the factual basis for a complaint begins with a letter or call that is alleged to violate one consumer's rights. This is the narrow lens the Collector Defendants hope this Court will adopt, because it obscures what this class action is about: a deliberate, attorney-engineered scheme to defraud and exploit consumers and patients in Wyoming and beyond, thus burdening the entire healthcare market in a state ranked 49th in the nation for healthcare affordability and access.[1] The Amended Class Action Complaint ("Complaint" or "AC") alleges sufficient facts, so the Court should deny the Collector Defendants' motion.

## BACKGROUND

Attorney Daniel B. Wilkerson ("Wilkerson") owns, directs, oversees, and controls Wilkerson & Wilkerson, LLC d/b/a Wilkerson Law Group ("W&W") and Rocky Mountain Recovery Systems, Inc. ("RMR" or "RMRSI") (collectively the "Collector Defendants"), and the debt collection enterprise between them. (AC ¶¶ 18, 47.) He owns other collection agencies too. (¶¶ 48, 49.) W&W and RMR share staff members, resources, systems, databases, court affiants, notaries, letter-printing processes, and offices. (¶ 42, 43, 52.)

The Collector Defendants (including W&W and Wilkerson) have incentivized businesses and medical clinics across Wyoming and beyond—including the 501(c)(3) charity Wyoming Health Fairs ("WHF")—to insert specific language in consumer or patient contracts purporting to authorize 35% collection fees, 21% interest, attorney's fees, and costs. (AC ¶ 7, 32, 53-55, Exs. B, C.) But Wyoming courts have repeatedly found the Collector Defendants' 35% collection fee to be unconscionable, unenforceable, and illegal. (Exs. D, E, F.) Nevertheless, it is RMR's standard

[1] The Commonwealth Fund, *Scorecard on State Health System Performance: Wyoming* (2023), https://interactives.commonwealthfund.org/2023/state-scorecard/Wyoming.pdf.

operating policy to attempt to collect these fees despite knowing "from experience, that a court probably will not award those to us." (¶ 330). That's exactly what happened to Plaintiff.

Plaintiff visited WHF for a blood draw, and was asked to sign a "Sign-In Sheet" which contained this fee and interest language. (¶¶ 56-59, Ex. C.) Plaintiff was told he did not owe anything, but later received a surprise bill for $239.00, which he paid, but WHF did not process his payment. (¶¶ 56-64.) WHF referred the bill to RMR, which sent Plaintiff a collection letter asserting that he owed $289.19 as a principal balance (which included a $50.19 finance charge), plus a $101.22 collection fee, and $0.07 in interest—total fees and interest exceeding 100% APR. (¶¶ 7, 8, 74-77.) RMR's letter shortened the time Plaintiff was allowed under law to dispute it (¶¶ 295-311), and RMR sent this letter while it was delinquent on its tax obligations and dissolved by the State of Wyoming (¶¶ 9, 381). Attorney Wilkerson had a role in reviewing, drafting, approving, and otherwise implementing the debt collection letter template that Plaintiff alleges was misleading, unlawfully shortened his dispute time, and demanded illegal collection fees, interest, and interest-on-interest. (¶ 311.) RMR sends at least 26,000 debt collection letters a year. (¶ 445.)

When Plaintiff called the phone number on the debt collection letter to dispute the debt, a voice said, "Thank you for calling Rocky Mountain Recovery…or Wilkerson & Wilkerson." (¶ 109). Indeed, this is a phone number shared by W&W and RMR; it's the same phone number that appears in Wilkerson's signature block in the 100 or so debt collection lawsuits he files every month against consumers. (¶¶ 1, 4.) Plaintiff left a voicemail stating, "Do not call me back. I am really concerned about your company…I don't want you to call me," and sent a letter disputing the debt and demanding cessation of collection. (¶¶ 115-120.) But a representative at the joint collection agency/law firm phone line called Plaintiff, threatening impermissible credit reporting and daily interest accrual on top of what was already 100% APR. (¶¶ 121-156.) Plaintiff was

nervous, fearful, and upset. (¶ 116.) A W&W legal assistant (¶ 334) accessed RMR's collection software and added a note on Plaintiff's account stating, "ALL CALLS TO DBW," as in Daniel B. Wilkerson (¶ 232). Plaintiff's account was also flagged, "NEXT STEP COURT." (¶ 233.) Wilkerson emailed Plaintiff stating, "Wilkerson Law Group represents Rocky Mountain Recovery in all matters, and Wyoming Health Fair[s] in this specific matter concerning you. Send all requests, questions, and correspondences to me only." (¶ 238.) Plaintiff paid the disputed amounts RMR demanded with a reservation of rights—including collection fees and interest—because he was threatened, did not want to be sued or have his privacy invaded, and unfair, deceptive, and misleading debt collection tactics coerced him. (¶ 176.) RMR received the entire amount (¶ 252), retained the fees and interest, and the Collector Defendants have refused to provide a refund (¶ 245).

RMR's debt collection license was terminated by the State in January 2025, but RMR continues to collect debts, and Wilkerson continues to sign and file Wyoming state court complaints falsely stating that RMR holds a collection agency license. (¶ 9.)

## STANDARD OF DECISION

On a Rule 12(b)(6) motion, a Court "assess[es] whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Rule 12(b)(1) motions "must be determined from the allegations of fact in the complaint,

without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the complaint's allegations as true. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

## ARGUMENT

### I. Plaintiff has standing for claims against W&W and Wilkerson because they led the scheme to violate the rights of Plaintiff and thousands of others similarly situated

The Complaint alleges that W&W and Wilkerson led a scheme that injured Plaintiff, and were directly involved in contributing to Plaintiff's injuries, thus establishing standing.

The Court assumes that Plaintiff's "claim has legal validity." *Hill v. Warsewa*, 947 F.3d 1305, 1308 (10th Cir. 2020) (quotation omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the Court] 'presume[s] that general allegations embrace those specific facts that are necessary to support the claim.'" *U.S. v. Colorado Supreme Ct.*, 87 F.3d 1161, 1165 (10th Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "When evaluating a plaintiff's standing at [the pleading] stage, 'both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

The standing inquiry is "focused on whether the party invoking jurisdiction had a sufficient stake in the outcome when the suit was filed." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1162 (10th Cir. 2023). Standing requires: (1) an injury in fact, (2) fairly traceable to the defendant's conduct, and (3) redressable by a judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

(2016). An injury in fact requires a (1) concrete, (2) particularized, and (3) non-speculative injury; and "[m]onetary costs 'are of course an injury.'" *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 111, 114 (2025) (quoting *United States v. Texas*, 599 U.S. 670, 676 (2023)). Common law fraud, misrepresentation, invasion of privacy, defamation, abuse of process, conversion, and negligence are each traditional harms. *See, e.g.*, *Lupia v. Medicredit, Inc.*, 445 F. Supp. 3d 1271, 1280 (D. Colo. 2020), *aff'd*, 8 F.4th 1184 (10th Cir. 2021).

Causation is satisfied when the injury is fairly traceable to the "challenged action of the defendant," not to independent, third-party action. *Lujan*, 504 U.S. at 560. To show redressability, "the plaintiff must simply show a predictable chain of events that would likely result from judicial relief and redress the plaintiff's injury." *Diamond Alternative Energy,* 606 U.S. at 121 (quotation omitted). Defendants' motion challenges injury and traceability, not redressability. (MTD at 7.)

Numerous federal courts "have found alleged violations of various rights guaranteed by the FDCPA to constitute injury-in-fact." *Lupia*, 445 F.Supp.3d at 1279 (collecting cases); *see also Cooper v. Stephen Bruce & Assocs.*, No. CV-18-487-R, 2019 WL 97826, at *4 (W.D. Okla. Jan. 3, 2019). Indeed, alleged violations of 15 U.S.C. § 1692g, as here, confer standing because the law protects consumers from "paying a debt which is not in fact owed," and "from being subjected to abusive communications from debt collectors when liability has not been confirmed." *Lupia*, 445 F.Supp.3d at 1280. A communication prohibited under 15 U.S.C. § 1692c(c) also "constitutes a real injury in and of itself." *Id*. (quotation omitted).

The Collector Defendants first harmed Plaintiff by incentivizing healthcare clinics including WHF to insert collection fee and interest language in purported contracts. (¶¶ 2, 53.) This language benefited RMR, W&W, Wilkerson, and the collection enterprise between them, all at Plaintiff's expense. (¶ 2, 339.) Because W&W and RMR are both owned and controlled by

Wilkerson (¶ 47), W&W represents RMR in "all matters," (¶ 238), and Wilkerson almost always represents RMR in court (¶ 4), when Wyoming courts found their collection fees to be unconscionable, unenforceable, and illegal (Exs. D, E, F), they had a duty to bring the language into compliance with the law—but they did not.

Wilkerson and W&W suggest that Plaintiff's standing is confined to RMR, because the unlawful conduct was RMR's alone. This ignores Wilkerson and W&W's ongoing and unremedied role. Their traceability argument fails because Wilkerson played a role in reviewing, drafting, approving, and otherwise implementing the specific letter template sent to Plaintiff. (¶¶ 311, 295-311.) Wilkerson and W&W are further implicated because a W&W legal assistant (¶ 334) accessed RMR's collection software and added a note on Plaintiff's account stating, "ALL CALLS TO DBW," as in Daniel B. Wilkerson (¶ 232), who emailed Plaintiff directly. (¶ 238.) Plaintiff's account was flagged, "NEXT STEP COURT." (¶ 233.) W&W and RMR are conjoined: they share staff members, resources, systems, databases, court affiants, notaries, letter printing processes, and offices throughout Wyoming (¶ 42, 43, 52); a W&W legal assistant signs affidavits claiming to have personal knowledge of consumer debts as an RMR manager (¶¶ 5, 334); a W&W paralegal has checkbook authority on RMR's bank account (¶¶ 336-337); and RMR does not review fees, charges, and interest until (through W&W) they sue, thus deferring RMR's obligations under the FDCPA until Wilkerson can claim attorney's fees (¶¶ 326, 355, 356).

The Collector Defendants' citation to *Shields v. Pro. Bureau of Collections of Maryland, Inc.* (MTD at 9) is misplaced, because that consumer "never alleged the letters caused her to *do* anything." 55 F.4th 823, 830 (10th Cir. 2022) (emphasis in original). Here, Plaintiff paid disputed amounts—collection fees, interest, and interest-on-interest—because of the Collector Defendants' conduct. (¶ 176.) Because, among other things, he did not want to be sued. (¶ 176.) The Collector

Defendants also appear to be arguing against class certification at the motion to dismiss stage.[2] But a plaintiff need only "show that a favorable judgment will relieve a discrete injury." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005). A favorable judgment "need not relieve his or her every injury." *Id.* Furthermore, because the FDCPA "provides for liability for attempting to collect an unlawful debt … and permits the recovery of statutory damages," "actual damages are not required for standing under the FDCPA." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003). The Collector Defendants' argument on standing should be rejected even if there were no allegations of actual damages (which there are in the Complaint).

When standing is in question, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth*, 422 U.S. at 501. For this reason, Plaintiff supplies a declaration establishing that:

1. Wilkerson manages RMR's business development and client-service efforts; its collection activities; he is the day to day manager for debt collectors; manages financial and support personnel; implements and supervises employee training; is the central point of escalation, issue resolution, and management decision making; and supervises the work of about 7,000 accounts per month. (Webster Decl. Ex. A.)
2. Wilkerson signed oaths that he has studied Wyoming collection agency laws, rules, and regulations; and is responsible for monitoring the same. (*Id.*, Ex. B, C, D at ¶ 17.)
3. W&W legal assistant Tammy Mattson (AC ¶ 334) "is the account manager for Plaintiff's debt" and has personal factual knowledge "about the status of Plaintiff's file, including the communications sent and received, the debts owed, and the status of payment on the alleged debt." (*Id.*, Ex. E at 4 (Interrogatory no. 6).)
4. Wilkerson has personal knowledge of relevant communications, the alleged debt, and payment of the alleged debt. (*Id.*)
5. W&W and RMR contemporaneously published help wanted classified ads requesting resumes be sent to "tammy@rsiwy.com," an RMR email address. (*Id.*, Ex. F.)
6. RMR uses debt collection letters threatening "asset information research, which will be used by management." (*Id.*, Ex. G.)
7. Wilkerson testified in a lawsuit against his other collection agency that he has training

[2] "The presence of class members who experienced varying degrees of injury, including some who were altogether uninjured, does not bar class certification . . . ." *Black v. Occidental Petrol. Corp.*, 69 F.4th 1161, 1185 (10th Cir. 2023).

and review responsibility, and that when there are gaps in training "the buck absolutely stops with me." (*Id.*, Ex. H at 33:13–34:3.)

8. Out of fear, Plaintiff has deferred a medical visit after finding out one of his other provider's patients have been sued by Wilkerson, W&W, and RMR. (*Id.*, ¶ 27.)
9. Plaintiff is fearful that he will not be able to get medical treatment without being forced to sign documents containing unlawful language, in light of Collector Defendants' relationships with so many clinics in Wyoming—sometimes the only hospital nearby, and sometimes covering entire specialties in a region. (*Id.*, ¶¶ 23-28.)
10. RMR's state debt collection license was terminated, but they continue to engage in debt collection, including the unlawful tactics identified in the Complaint. RMR has been unable to obtain a new license, and there is now a contested case hearing on the topic scheduled for April 2026. (*Id.*, ¶¶ 11-22.)[3]

Finally, the Collector Defendants' scheme must be seen as the funnel it is: they create language and give it to creditors with an incentive; accounts get referred to RMR, which sends letters and places calls; W&W starts sending letters; W&W serves a summons and complaint; and then there is a request for a default judgment. Moreover, because the Collector Defendants affirmatively placed Plaintiff in this funnel, he has standing to challenge the entire scheme.

## II. Plaintiff does not need to pierce the corporate veil to pursue claims against the W&W Firm or Attorney Wilkerson—but they are on notice

W&W and Wilkerson ask the Court to dismiss them from this action because they are not sufficiently on notice that Plaintiff intends to pierce the corporate veil. (MTD at 9–11.) This is a puzzling request. Plaintiff brings claims against W&W and Wilkerson for their direct liability.

"Officers, directors and other agents may be held individually liable for personal participation in tortious acts even though performed solely for the benefit of the corporation, and such liability does not require that the "corporate veil" be pierced…." *Wallop Canyon Ranch, LLC v. Goodwyn*, 351 P.3d 943, 960 (Wyo. 2015) (citing William Meade Fletcher, *3A Fletcher Cyc.*

[3] After a collection agency knowingly collects debts without a license, it can never get a license again. Wyo. Stat. § 30-11-105(b)(iv)(F). It is a violation of law to collect debts without a license. Wyo. Stat. § 30-11-102. RMR's power to sue comes from a statute requiring licensure. Wyo. Stat. § 33-11-114. But RMR, via W&W and Wilkerson, continues to send letters, file lawsuits, obtain, and enforce judgments.

*Corp.* § 1137, at 246 (perm. ed., rev. vol. 2011 and Cum Supp. 2014–2015)). The Amended Complaint alleges both the W&W Firm and Wilkerson's personal participation, authorization, direction, knowing consent, and approval. (*See*, *e.g.*, AC ¶¶ 4-7, 9, 36, 47, 54, 232, 238, 311.) Thus, Plaintiff's claims should proceed even without veil piercing.

Contrary to the Collector Defendants' argument, Plaintiff did not "simply nam[e] the owner of a corporation as a defendant," *James v. James*, 493 P.3d 1258, 1269, ¶ 41 (Wyo. 2021), without including any "information or allegations, such as the factors the courts consider when determining whether it is proper to pierce the corporate veil, which would put [them] on notice of that desired intent," *Ridgerunner, LLC v. Meisinger*, 297 P.3d 110, 116, ¶ 16 (Wyo. 2013). Rather, Plaintiff included facts showing a failure of separateness, misuse of the corporation/LLC, and intermingling of business and finances. Plaintiff alleges a sharing of staff members, offices, and other resources (AC ¶ 52); common financial control and management between the Collector Defendants (¶ 336); a W&W paralegal having check signing authority for RMR (¶ 337); a W&W legal assistant logging in to RMR's database to modify Plaintiff's account (¶¶ 232, 334); and a W&W legal assistant signing affidavits for default judgment claiming to have personal knowledge of consumer indebtedness as "Manager for [RMR]" (¶¶ 5, 375). The Collector Defendants' motion ignores these allegations, which easily satisfy Rule 8(a).

**III. W&W and Wilkerson are "debt collectors" under the FDCPA**

W&W does not challenge that it is a "debt collector" under the FDCPA. *See* AC Ex. L (W&W letter stating, "Federal law classifies our firm as a 'debt collector'….."); 15 U.S.C. § 1692a(6). However, Wilkerson seeks dismissal of the FDCPA claims against him individually, falsely asserting that there is no on-point controlling Tenth Circuit law. (*See* MTD at 11.)

"Attorneys engaged in the collection of debts are debt collectors subject to liability under

the FDCPA." *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002); *accord Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (FDCPA applies to attorneys who regularly engage in consumer debt collection activity, even when that activity consists of litigation); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 604-05 (2010) (bona fide error defense did not shield a law firm and one of its attorneys from liability for violating the FDCPA). Indeed, the Complaint alleges that Wilkerson is a "debt collector" under the FDCPA. (AC ¶ 33.)

The FDCPA establishes two alternative predicates to show that a person is a debt collector: (1) debt collection is their principal purpose; or (2) they regularly collect or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, to another. 15 U.S.C. § 1692a(6); *see also James v. Wadas*, 724 F.3d 1312, 1316 (10th Cir. 2013). The Tenth Circuit has a nonexclusive five-part test for whether an attorney "regularly" engages in debt collection:

> (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernible, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.

*James*, 724 F.3d at 1317-18 (citing *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 62-63 (2d Cir. 2004)).

Only one of the two alternative predicates under 15 U.S.C. § 1692a(6) must be satisfied to deem Wilkerson a "debt collector" under the FDCPA; but here, both are met. The Complaint plausibly alleges, and it is a reasonable inference from the Complaint, that Wilkerson's principal purpose is debt collection, and he regularly collects or attempts to collect debts.

As to the *James v. Wadas* "regularity" factors: Wilkerson's Wyoming litigation work consists mostly of debt collection lawsuits for his own debt collection agencies, including RMR. (AC ¶ 31.) RMR files an average of 100 debt collection lawsuits against consumers every month—sometimes almost 200. (¶¶ 1, 177, 373, 440, 441.) Wilkerson is almost always counsel of record (¶ 4); he files so many debt collection lawsuits that he does not support attorney fee petitions with actual time entries, but instead a formulaic system of "studies of the firm's average time expenditures" (¶ 356); Wilkerson's law firm signature block lists RMR's phone number (¶ 4); and even outside of litigation, his firm sends debt collection letters as part of an integrated workflow with RMR (¶¶ 235, 406–409 & Ex. L). Wilkerson's personnel routinely file affidavits in support of default judgments that are notarized by his paralegal (¶¶ 5, 335); a W&W paralegal has check-writing authority for RMR (¶ 337); W&W staff make themselves fact witnesses in RMR's debt collection lawsuits, proclaiming to be a 'manager' of RMR (¶¶ 5, 375); Wilkerson and staff of his law firm have RMR email addresses (¶¶ 5, 39, 335); Wilkerson's legal assistant has access to RMR's debt collection software and entered a note regarding Plaintiff specifically: "ALL CALLS TO DBW," as in Wilkerson (¶¶ 232, 334); RMR's internal collection software stated, "NEXT STEP COURT" regarding Plaintiff (¶ 233); and RMR's collection software tracks attorney's fees owed and received (¶ 234). W&W sends debt collection letters generated via RMR's debt collection system and connected to RMR's collection software. (¶¶ 3, 235.)

The thrust of the Complaint is that W&W is more or less a front for Wilkerson's debt collection enterprise, which is the overwhelming majority of the firm's purported practice (¶ 4, 31); and Wilkerson personally emailed Plaintiff to state, "Wilkerson Law Group represents Rocky Mountain Recovery in all matters" (¶ 238). Wilkerson is registered with the Wyoming Collection Agency Board as RMR's "resident manager." (¶ 20, 28.) His firm's template debt-collection notice

*states* it is a "debt collector" under federal law. (AC, Ex. L.) These facts differ materially from *James v. Wadas* and other cases where attorneys have escaped personal liability.[4] Wilkerson's references to other cases do not dictate a different result.[5]

## IV. Unjust enrichment

Contrary to the Collector Defendants' statement that "RMRSI did not accept, use, or enjoy payment" because Plaintiff paid WHF, the Complaint alleges that WHF gave the entire amount to RMR (AC ¶ 252) consistent with RMR's agreements assigning those debts to it (AC, Ex. A), and that RMR retained it and refused to refund it (¶¶ 198, 354-355). Plaintiff's repeated disputes (¶¶ 91, 134) (before payment), his under-duress payment, and his reservation of rights (¶¶ 174-176) overcome the Collector Defendants' unjust enrichment arguments. Because these debts were unlawful, or unlawfully collected, the Collector Defendants' enrichment was necessarily unjust.

## V. Negligence and negligence per se

To establish negligence, a plaintiff must prove: (1) the defendant owed the plaintiff a duty to conform to a specified standard of care; (2) the defendant breached the duty of care; (3) the breach proximately caused injury to the plaintiff; and (4) the injury is compensable by money damages. *Miller by and through Travis v. Sweetwater Cnty. Sch. Dist. #1*, 500 P.3d 242, 246-47, ¶ 15 (Wyo. 2021) (collecting cases). A duty exists where the "interest of the plaintiff which has

---

[4] *See*, *e.g.*, *Chung v. Lamb*, No. 14-CV-03244-WYD-KLM, 2017 WL 10777666, at *2 (D. Colo. Sept. 28, 2017) (attorney did not have principal purpose of debt collection when firm billed less than 1% of time to debt collection); *Rico v. Eveland*, No. 2:18-CV-00644-JCB, 2020 WL 7414016, at *7 (D. Utah Dec. 17, 2020) (same, because only 0.52% of attorney's cases were consumer debt collection cases).

[5] *See, e.g.*, *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D. Wyo. 2011) (attorney officer, shareholder, and director of debt collector, intimately involved in collection practices, supervised collection, and whose voice was in messages was a "debt collector," and "[a]s such, he is personally liab[le] for damages"); *Brumbelow v. L. Offs. of Bennett & Deloney, P.C.*, 372 F.Supp.2d 615, 622 (D. Utah 2005) (denying summary judgment to attorneys exercising supervisory authority over debt collector, intimately involved in practice and procedures, and who developed and implemented disputed practice).

suffered invasion was entitled to legal protection at the hands of the defendant." *Goodrich v. Seamands*, 870 P.2d 1061, 1064 (Wyo. 1994).

Some factors showing the existence of a duty are: (1) the foreseeability of harm, (2) the connection between the defendant's conduct and the injury, (3) the degree of certainty of injury, (4) the moral blame of defendant's conduct, (5) the policy of preventing future harm, (6) the burden upon the defendant, (7) the consequences to the community and judiciary, and (8) insurance. *Berry v. Tessman*, 170 P.3d 1243, 1245, ¶ 8 (Wyo. 2007) (quoting *Mostert v. CBL & Assocs.*, 741 P.2d 1090, 1094 (Wyo. 1987)). The court may also consider "'the magnitude of the risk involved in defendant's conduct, the burden of requiring defendant to guard against that risk, and the consequences of placing that burden upon the defendant.'" *Mostert*, 741 P.2d at 1093 (quoting *Nelson v. Commonwealth Edison Co.*, 465 N.E.2d 513, 159 (Ill. App. 2nd Dist. 1984)).

A duty of care "may arise by contract, statute, common law, or when the relationship of the parties is such that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff." *Rice v. Collins Commc'n, Inc.*, 236 P.3d 1009, 1015, ¶ 13 (Wyo. 2010). "[A] court *may*, under certain circumstances, adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment. However, if such a standard is not adopted the unexcused violation of the enactment may serve as evidence of negligence." *Pullman v. Outzen*, 924 P.2d 416, 418 (Wyo. 1996) (emphasis in original); *see also Distad v. Cubin*, 633 P.2d 167, 176 (Wyo. 1981) (stating that rules and regulations adopted pursuant to statutory authority and properly promulgated have legal force).

The Collector Defendants owed Plaintiff and class members a duty as reasonable debt collectors, and a reasonable attorney, including under the FDCPA, Wyoming Rules of Professional Conduct, Wyoming Collection Agency Act (Wyo. Stat. § 33-11-101, et seq., "WCAA"), and

Collection Agency Board ("CAB") Rules (which incorporate the FDCPA).[6]

The Collector Defendants knew, because it was foreseeable, that instructing their clients to insert language in purported contracts seeking to collect illegal fees would cause harm to consumers, especially because Collector Defendants' prior court orders found those fees unconscionable and illegal. (AC ¶¶ 102, 104, Exs. E, G.) As RMR's "resident manager," Wilkerson was obligated to keep RMR in compliance with the WCAA and CAB Rules, but he allowed RMR to be dissolved, these violations to occur, and for RMR's license to terminate. The FDCPA, WCAA, and CAB Rules were enacted to protect consumers, including Plaintiff and the class. *See*, *e.g.*, CAB Rules, Ch. 3, § 3 ("No licensee shall collect or sue, either as an assignee or as agent for any creditor, for more than the actual amount due or claimed to be due….").

## VI. Breach of contract and breach of the implied covenant of good faith and fair dealing

The Collector Defendants argue that because there was no contract between RMR and Plaintiff, there can be no breach. However, the Collector Defendants are liable because they are agents of a party to the contract, WHF, and are its assignees.

RMR's agreements with other clinics provide that, "RMRSI agrees to accept for recovery services, unpaid accounts which Client shall refer to RMRSI. All accounts referred to RMRSI will be deemed, and hereby are, assigned transferred, and set over to RMRSI for its services." (AC, Ex. A pp. 1, 4, 9, 12 (this language is almost identical in the cited pages; each uses the phrase "are assigned").) Undoubtedly, RMR claims to have acquired rights through this process (e.g., the 35% collection fee). As RMR's employee told Plaintiff, "It was improper for you to be communicating

---

[6] *See*, *e.g.*, Ch. 1, § 4(a) (setting expectation that collection agencies and resident managers fully comply with WCAA and CAB Rules), *but see* AC ¶¶ 397-405; Ch. 3 § 3 (prohibiting collecting or suing for more than the actual amount due), *but see* AC ¶¶ 312-338; Ch. 4, § 1 (requiring open, fair, and honest dealing), *but see* AC ¶¶ 2, 330 (RMR admitting it will collect fees and interest it knows a court probably will not award, so long as someone is willing to pay it); Ch. 4, § 6 (incorporating the FDCPA).

with Wyoming Health Fairs on this matter to begin with … there's legal principles that say you should be communicating with the one and only agent on the matter" and "we are still their lawful agent." (¶¶ 206, 207, 209, 213.) The Amended Complaint alleges that the Collector Defendants gave the operative debt collection language to WHF, and did so for the Collector Defendants' benefit. (¶¶ 2, 55.) Further, agreements between RMR and its clients require RMR to comply with the FDCPA, and indemnify their clients for violations. (*See*, *e.g.*, AC, Ex. A at 1.) The Complaint plausibly alleges violations of the FDCPA.

The Complaint also plausibly alleges breach. The Sign-In Sheet purports to authorize interest of 1.75% per month and a 35% collection fee (AC, Ex. C), but RMR demanded that Plaintiff pay interest and a collection fee exceeding those amounts, in reliance on and as a means of attempting to enforce a purported contract (¶¶ 7, 228-231, 486). Under pressure from the Collector Defendants, Plaintiff paid these amounts. (¶¶ 174-176.)

"When an agent is acting without authority on behalf of a disclosed principal, it can be held liable for its conduct in some circumstances." *Peterson v. Meritain Health, Inc.*, 508 P.3d 696, 709 ¶ 41 (Wyo. 2022). One circumstance is when the agent "personally binds itself or exceeds its authority." *Id.* (quotation omitted). In other words, "'an agent who acts in excess of its authority is generally liable on the contract.'" *Peterson*, 508 P.3d at 709 (quoting 12 Samuel Williston, *Treatise on the Law of Contracts* § 35:34, at 503–04 (Richard A. Lord ed., 4th ed. 2012)).

Furthermore, even if RMR did not exceed its authority, it is bound as a contract assignee. (AC, Ex. A (titled "ACCOUNT SERVICE AND *ASSIGNMENT AGREEMENT*") (emphasis added) & ¶ 1 ("All accounts referred to RMRSI will be deemed, and hereby are, assigned, transferred, and set over to RMRSI for its services.").) An "assignee stands in the shoes of the assignor and receives all of such right, title and interest as is possessed by the assignor and which

the parties make the subject of the contract." *Jones v. Central States Inv. Co.*, 654 P.2d 727, 732 (Wyo. 1982); *see also Coleman v. Holecek*, 542 F.2d 532, 538 (10th Cir. 1976) (same, in garnishment context).

The implied covenant claim likewise survives. "The implied covenant of good faith and fair dealing requires that neither party commit an act that would injure the rights of the other party to receive the benefit of their agreement." *Scherer Constr., LLC v. Hedquist Constr., Inc.*, 18 P.3d 645, 653 (Wyo. 2001). The Complaint alleges that the Collector Defendants hindered justified expectations through bad faith conduct, such as threatening illegal credit reporting and demanding unenforceable fees. (AC ¶ 489.)

Though derivative, the Complaint's conspiracy count further supports liability for W&W and Wilkerson, who share financial control, management, and commingled funds with RMR. (¶¶ 295-96, 312-14, 373); *see also Action Snowmobile & RV, Inc. v. Most Wanted Performance, LLC*, 423 P.3d 317, 324 (Wyo. 2018) (citing *White v. Shane Edeburn Constr., LLC*, 285 P.3d 949, 958 (Wyo. 2012).); *cf. Jurkovich v. Estate of Tomlinson*, 843 P.2d 1166, 1172 (Wyo. 1992) ("A civil conspiracy, or 'concerted action' tort, may be proven by circumstantial evidence such as that which has been alleged in this case.").

**VII. Fraud and fraudulent inducement**

The Collector Defendants suggest that the Complaint does not allege with specificity "the time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby." In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake; but malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. *See* Fed. R. Civ. P. 9(b).

The Complaint alleges that "[t]he Collector Defendants, and each of them, have

constructed a scheme, including charging excess interest and fees, in furtherance of increasing both Collector Defendant profit and delivering more funds to original creditors, in order to retain clients" (AC ¶ 339, *and see* ¶¶ 2, 195) to "maximize debt collection profit" (¶ 2). They "knowingly and intentionally made false representations, misrepresentations, and omissions of material facts" about interest, fees, deadlines, and more, with the intent to induce action such as giving up rights, entering agreements, and making payments. (¶¶ 465-469). The Complaint specifically references: the WHF Sign-In Sheet on "4/29/2024" at the "Laramie WHF Office" with language about fees and interest (AC, Ex. C) that the Collector Defendants provided to WHF (¶ 55); the Dec. 12, 2024 letter via postal mail to Laramie asserting fees and interest were owed (AC, Ex. D), which Wilkerson had a role in drafting and implementing (¶ 311); the Dec. 23, 2024 phone call from Mark Edwards (¶¶ 112, 121); and the Dec. 31, 2024 phone call with Mike Pinti (¶ 184). These allegations are particular and sufficient at this stage.

## VIII. Declaratory judgment

The Collector Defendants argue that there is no case or controversy regarding Plaintiff's declaratory judgment count because his claims are moot and he seeks damages. (MTD at 18-19, citing *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997).) As an initial matter, Plaintiff's claims are not moot. Defendants have retained and refused to return at least a 42% collection fee and 40% in annualized interest (AC ¶¶ 86-87, 198), which is not authorized by any purported contract, or law, and exceeds 35% collection fees already found to be unconscionable, uncollectable, and illegal. In addition, Plaintiff's fears about reputational harm, tax consequences, and credit reporting are not moot.

The Collector Defendants argue that Plaintiff "seeks to retroactively invalidate state court decisions." (MTD at 20.) Not so. Declaratory and injunctive relief benefit the class without altering

a final state court judgment. Despite unconscionability findings, the Collector Defendants have continued to obtain unlawful state court judgments against consumers with 35% or more in collection fees, 21% or more in interest, attorney's fees, and costs, leading to judgements procured by fraud. Moreover, all judgments the Collector Defendants have obtained since RMR's license was terminated in January 2025 were procured by fraud, because RMR's authority to sue in its own name depends on state licensure. *See* Wyo. Stat. § 33-11-114. Declaratory relief here does not undo these judgments; it binds these defendants, not the state court:

> A United States court, if the elements of federal and equity jurisdiction are present, may enjoin a judgment creditor from enjoying the benefits of a judgment obtained in a state court through extrinsic or collateral fraud. Such an injunction operates upon the judgment creditor, not the judgment or decree of the state court.

*Beneficial Loan Co. v. Noble*, 129 F.2d 425, 427 (10th Cir. 1942); *see also United States v. Mashunkashey*, 72 F.2d 847, 851 (10th Cir. 1934) ("In such a case, the court does not act as one of review . . . . The action operates upon the party, not the judgment or decree of the state court.")

Because this issue touches standing, Plaintiff supplies a declaration establishing that the Collector Defendants have relationships with clinics across Wyoming, including the only emergency room in an entire region, and often blanketing entire cities, and Plaintiff is fearful that he will not be able to obtain medical services without being forced to sign or agree to unconscionable language. (Webster Decl. ¶¶ 23-28). Moreover, the Collector Defendants are continuing their conduct even after losing their debt collection license. (*Id.* ¶¶ 11-22.) Accordingly, Plaintiff, for himself and the class, is "asking the Court to define the Defendants' legal obligations in anticipation of some future conduct, and not to simply proclaim liability from a past act." *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Service*, 921 F.Supp.2d 1137, 1203 (D. N.M. 2013).

A plaintiff need only "demonstrate that the probability of that future event occurring is real

and substantial, 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011) (quoting *Steffel v. Thompson*, 415 U.S. 452, 460 (1974)). The Complaint (¶¶ 496-511) plausibly alleges an ongoing pattern of unlawful conduct by Defendants, including repeated demands for unconscionable fees, improper interest calculations, and false representations, which extend beyond Plaintiff's individual harm to significant impacts on class members and the public. The Complaint, when the facts are viewed in the light most favorable to Plaintiff, and all reasonable inferences are drawn in his favor, shows the present need for declaratory relief.

The Collector Defendants' contention that declaratory relief is unavailable when damages are sought is wrong. The Declaratory Judgment Act, 28 U.S.C. § 2201, empowers federal courts to declare rights alongside claims for monetary damages. *See, e.g.*, *Powell v. McCormack*, 395 U.S. 486, 518 (1969) ("[A] request for declaratory relief may be considered independently of whether other forms of relief are appropriate." (citation omitted)). Courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Courts permit declaratory relief in FDCPA cases where plaintiffs seek damages for past violations and declarations to address a live dispute. *See, e.g.*, *Ladick v. Van Gemert*, 146 F.3d 1205 (10th Cir. 1998) (reversing summary judgment dismissal of complaint seeking "declaratory judgment and statutory damages for violations of the FDCPA"); *Niederquell v. Bank of Am., NA*, No. 11-cv-03185-MSK-MJW, 2012 WL 1578060 *4, 6 (D. Colo. May 4, 2012) (denying motion to dismiss declaratory judgment and FDCPA claims).

Plaintiff's action is not moot because he has received neither damages nor the declaratory relief sought. There is a live controversy as to whether the Collector Defendants broke the law, owe Plaintiff money, and whether other relief is warranted. The Complaint seeks a declaration that

the Collector Defendants' 35% collection fees are unconscionable and unenforceable—a determination Wyoming state courts have repeatedly made (AC ¶¶ 6, 304), and such a declaration will stop future unlawful debt collection against class members. This mootness argument also fails because the Collector Defendants have made neither Plaintiff nor the class whole. *Cf. Sosna v. Iowa*, 419 U.S. 393, 399-400 (1975) (noting that a certified class "acquire[s] a legal status separate from the interest asserted by" the named plaintiff).

The Collector Defendants also contend that Plaintiff's declaratory judgment claim is moot because RMR no longer maintains an open account for Plaintiff, rendering any declaration merely advisory and without effect on an ongoing controversy. (MTD at 18, citing *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997)). *Green* is inapposite, however, because the plaintiff prisoner there had been released. 108 F.3d at 1299. Here, the Collector Defendants' unlawful scheme continues unabated.

## IX. Wyoming Consumer Protection Act

The Complaint plausibly states violations of the Wyoming Consumer Protection Act ("WCPA"), Wyo. Stat. § 40-12-101, *et seq*. The WCPA prohibits making false or misleading factual statements concerning price or engaging in unfair or deceptive acts and practices "in connection with a consumer transaction." Wyo. Stat. § 40-12-105(a), (a)(vii), & (a)(xv). The Collector Defendants concede in a footnote that "merchandise" includes "services." (MTD at 21 n.6). *See* Wyo. Stat. § 40-12-102(a)(ii) & (vi). "[A] 'deceptive practice' has broadly been understood as one that is likely to mislead consumers, and an 'unfair practice' as one that "offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Nicklas v. Pro. Assistance, LLC*, No. 18-CV-0066-SWS, 2018 WL 8619646, at *3 (D. Wyo. 2018). Law firms are not exempt from the WCPA. *See WyoLaw, LLC v.*

*Office of Att'y General, Consumer Protection Unit*, 486 P.3d 964, 975–76, ¶¶ 42-44 (Wyo. 2021).

When the Collector Defendants inserted language into the Sign-In Sheet and purported contracts at other businesses and clinics across Wyoming (AC ¶¶ 2, 53, 55, Ex. B), and separately made demands for unlawful amounts of interest and illegal and unconscionable collection fees (AC ¶¶ 5, 6, 7, 311, 330) "in connection with" services, they violated the WCPA. Wilkerson and W&W are involved in this conduct. (AC ¶¶ 5, 6, 311, 331-341.) The WCPA provides for private remedies and explicitly authorizes class actions (§ 40-12-108), and does not prohibit actions under other statutory or common law provisions (§ 40-12-114).

## X. Wyoming Uniform Consumer Credit Code

The Collector Defendants contend that the collection fee and interest they demanded that Plaintiff pay are not governed by the WUCCC. (MTD at 21-22.) Yet that position effectively concedes a violation of the WUCCC, because creditors can *only* charge amounts explicitly authorized by the WUCCC:

> In the [WUCCC], the Legislature identified six specific charges a creditor may assess: application fees (Wyo. Stat. § 40-14-309(b)), service or finance charges (Wyo, Stat. § 40-14-212, 310, 348, 360 & 363), specified additional charges (Wyo. Stat. § 40-14-213, 311), delinquency charges (Wyo. Stat. § 40-14-214, 312), deferral charges (Wyo. Stat. § 40-14-215, 313), and limited collection charges (Wyo. Stat. 40-14-236, 244, 247, 248-249, 334-336, 338, 340, 353, 504 & 505). Under the [WUCCC] a creditor is allowed to impose a fee only if it is within one of these six categories. Conversely, if a fee is not within a permitted category, then the creditor may not require the consumer to pay it.

1999 Wyo. Op. Att'y Gen. 59, 1999 WL 964253 (1999) (opinion issued to CAB) (Webster Decl. Ex. I). An assignee of a seller's right to payment (such as the Collector Defendants) "is a 'seller' within the meaning of the WUCCC." *Vogel v. Onyx Acceptance Corp.*, 267 P.3d 1057, 1065, ¶ 27 (Wyo. 2011) (citing Wyo. Stat. § 40-14-207). "Sales" includes services. Wyo. Stat. § 40-14-205.

Here, the Collector Defendants crafted language purporting to authorize a 35% collection fee and 1.75% interest per month, language which they supplied to WHF and other providers. (AC ¶¶ 2, 53, 55, 65, 230, 231, Ex. B.) RMR sought to collect a 35% collection fee on top of 67.8% annualized interest, plus daily accruing interest—interest, fees, fees-on-interest, and interest-on-interest amounting to over 100% APR. (¶¶ 7, 68, 81, 86, 87, 128.) RMR stated that late fees, finance charges, and interest are all considered interest (¶¶ 324-325), and that even if there is no agreement authorizing fees or interest, RMR will still attempt to collect it (¶ 330).

The Collector Defendants argue that a "consumer credit sale" requires installments or that a "credit service charge," Wyo. Stat. § 40-14-204(a)(iv), was made. (MTD at 22.) But the Wyoming Supreme Court explained in *Iberlin v. TCI Cablevision of Wyoming, Inc.*, 855 P.2d 716, 725 (Wyo. 1993), that charging 1.5% per month after 60 days, and imposing that same charge every month for six months "had the complete character of a credit service charge or interest." Indeed, Wyo. Stat. § 40-14-209(a)(i) defines "credit service charge" to include "[a]ll charges payable directly or indirectly by the buyer and imposed directly or indirectly by the seller as a condition of or an incident to the extension of credit," including carrying and service charges. "Incident to the extension of credit" means "a charge assessed at any time during the duration of a credit transaction that is not assessed to a consumer in a comparable cash transaction whether imposed by the original creditor or an assignee or servicer of the credit transaction." Wyo. Stat. § 40-14-140(a)(xxi).

The Collector Defendants then contend that default charges are excluded from "credit service charge[s]." Wyo. Stat. § 40-14-209(b)(i). That inculpates the Collector Defendants, as Wyo. Stat. § 40-14-248 prohibits default charges except as authorized by the WUCCC, and Wyo. Stat. § 40-14-259 caps charges as a result of default on a much broader category of "consumer

related sale[s]" at 18% per year, explicitly labeling anything else unenforceable.

At the complaint stage, Plaintiff has plausibly alleged multiple WUCCC violations. The WUCCC is broadly remedial and governs usury; protects consumers against unfair practices; and encourages the development of fair and economically sound consumer credit practices. Wyo. Stat. § 40-14-102(b). It prescribes "maximum charges for all creditors." Wyo. Stat. § 40-14-107(a). It "shall be liberally construed and applied to promote [these] underlying purposes and policies." Wyo. Stat. § 40-14-102(a). Wyoming judges have cited the WUCCC, at Wyo. Stat. §§ 40-14-508 and 40-14-508(b), in finding the Collector Defendants' 35% collection fee unconscionable. (AC, Exs. E, F, G.) Indeed, the Collector Defendants have represented to Wyoming courts that the WUCCC's interest rate cap of 7% per annum governs when there is no agreement or provision of law specifying a rate. Webster Decl. Ex. J; *see* Wyo. Stat. § 40-14-106(e).

## XI. Racketeer Influenced and Corrupt Organizations Act (RICO) violations

The Collector Defendants make three arguments challenging Plaintiff's RICO allegations: that FDCPA violations are not predicate acts, that the allegations lack Rule 9(b) particularity, and that the allegations do not constitute mail or wire fraud. (MTD at 22-23.) These arguments fail.

The first argument is a red hearing, because the Complaint does not assert that the numerous FDCPA violations are the at-issue predicate acts. (AC ¶ 507.) Instead, the Complaint alleges mail and wire fraud (¶¶ 271-294), which the Collector Defendants do not dispute are predicate acts under 18 U.S.C. § 1961(a). The Complaint adequately alleges the particularity required by Rule 9(b), which applies to claims of mail and wire fraud. *Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002).

The "who, what, where, when, and how" of the alleged fraud is discussed *supra*, § VII. *See Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1277 (10th Cir. 2023); *see also Tal v. Hogan*,

453 F.3d 1244, 1263-65 (10th Cir. 2006) (a complaint which "identified the parties, the dates, the content of the communications, how they were allegedly fraudulent and how they furthered the fraudulent enterprise" satisfied Rule 9(b)). Knowledge and state of mind may be alleged generally. Fed. R. Civ. P. 9(b); *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). But specific to mail and wire fraud, the Complaint alleges the use of U.S. mail and phone calls (AC ¶¶ 63, 108 118, 161, 238, 273), the use of a Tennessee company to facilitate these mailings into Wyoming and out of Wyoming (¶ 508), and credit-reporting to companies outside of Wyoming (*id.*). The Complaint describes the false representations—the Collector Defendants falsely claimed to protect recipients and *not* trigger the FDCPA (¶ 281); stated that recipients' accounts had *not* been "turned for collection" (¶ 282); misstated dispute rights (¶¶ 106, 283, 286); made threats to take action(s) that could not legally be taken (¶ 156); stated that RMR was a law firm (¶ 288); and made threats to impose "higher interest rates" above amounts allowed by law (¶ 289). The communications also failed to disclose fees or interest; the accrual of interest when it was accruing; the interest rate or terms; and/or suggested that interest was accruing when it was not (or not at the stated rate). (¶¶ 125-129, 131, 133, 169-170.) Communications hid fees or interest in principal balances. (¶¶ 76-77, 87.) The letters sought to induce action by recipients (¶¶ 294, 507). When the letters did not induce payment, the Collector Defendants signed and filed Wyoming state court complaints stating (falsely, since January 2, 2025) that RMR holds a collection agency license. (¶¶ 9, 36.)

The Complaint therefore satisfies the particularity requirements of Rule 9(b). *See*, *e.g.*, *Tal*, 453 F.3d at 1266 (identifying by date and participants, three transmissions that satisfied Rule 9(b)); *see also George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255-56 (10th Cir. 2016) (comparing allegations missing dates or identifiers—which fell short of rule 9(b)—with allegations that

included names, dates, and details—which satisfied rule 9(b)). "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) (quoted favorably by *George*, 833 F.2d at 1257).

## CONCLUSION

Because Plaintiff has standing and each claim is supported by plausible allegations, Plaintiff requests that the Court deny the Collector Defendants' motion to dismiss. However, for any correctable omissions, Plaintiff respectfully requests to file a second amended complaint, as dismissal is not the appropriate remedy. *See* Fed. R. Civ. P. 15(a)(2).

Respectfully submitted,

Dated: November 11, 2025

By: */s/ Scott M. Flaherty*
Kellie Nelson Fetter (WSB 7-4597)
Scott M. Flaherty (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
675 Fifteenth Street, Suite 2300
Denver, Colorado 80202
Phone: (303) 297-2900
Email: kfetter@taftlaw.com
sflaherty@taftlaw.com

Tim Phillips (*pro hac vice*)
LAW OFFICE OF TIM PHILLIPS PLLC
331 Second Avenue South, Suite 400
TriTech Center
Minneapolis, MN 55401
Phone: (612) 470-7179
Email: tim@timphillipslaw.com

ATTORNEYS FOR PLAINTIFF
AND THE PUTATIVE CLASS