

# Office of the Attorney General

| Governor | Administration | Attorney General |
|---|---|---|
| Jim Geringer | 123 Capitol Building | Gay Woodhouse |
| | Cheyenne, Wyoming 82002 | |
| | 307-777-7841 Telephone | **Chief Deputy** |
| | 307-777-6869 Fax | Vicci M. Colgan |

**FORMAL OPINION NO. 99-010**

To:      The Honorable Rocklon L. Edmonds
Chairman, Wyoming Collection Agency Board

From:      Gay Woodhouse
Attorney General

Rowena L. Heckert
Deputy Attorney General

Drake D. Hill
Senior Assistant Attorney General

P. Olen Snider, Jr.
Assistant Attorney General

Date:      October 6, 1999

## Issues

By letter dated August 27, 1998, you requested an opinion regarding the application of Wyo. Stat. § 40-14-101 through 40-14-702, the Wyoming Uniform Consumer Credit Code (the "Code"), to certain practices of collection agencies governed by Wyo. Stat. § 33-11-101 through 33-11-116, the Wyoming Collection Agency Act (the "Act"). The Collection Agency Board (the "Board") has promulgated regulations to aid in the administration of the Act (the "Regulations"). Your letter poses three specific questions:

EXHIBIT I      Page 1 of 8

Wyoming Collection Agency Board
October 6, 1999
Page 2 of 8

**QUESTION NO. 1.** In collecting on a debt arising out of a consumer credit transaction, may a collection agency collect from the consumer any portion of the commission or other fee charged by the collection agency to the creditor for its services in collection of that debt?

**ANSWER:** No. Even if the debt agreement provides that the creditor may collect its costs of collection (including any commission or fee charged by the collection agency), neither the creditor nor the collection agency may collect any default charges unless they are specifically allowed under the Code.

**QUESTION NO. 2.** In collecting on a debt arising out of consumer credit transaction, may a collection agency collect from the consumer any fees that are permitted to be charged to the consumer under the debt agreement, even if the creditor has not assessed the fees?

**ANSWER:** No. Generally, unless the collection agency agreement specifically provides otherwise, the creditor must determine the amount of the debt to be collected, not the agent. The creditor, however, may assess any charge that is allowed under the contract and also allowed under the Code and other applicable law.

**QUESTION NO. 3.** Is Section 11(a) of Chapter 4 of the Regulations in conflict with the Code?

**ANSWER:** No. Section 11(a) of Chapter 4 of the Regulations is drawn nearly verbatim from the federal Fair Debt Collection Practices Act and should be interpreted consistently with its federal counterpart.

EXHIBIT I                                                                                      Page 2 of 8

**Discussion**

*QUESTION NO. 1*

You first inquire whether a collection agency may collect from a consumer its commission or other fee charged by the collection agency to the creditor. Because the Code restrictions on default charges are generally the same for all consumer credit transactions, this opinion addresses default charges in connection with all three types of consumer credit transactions.

Your inquiry raises issues of statutory interpretation. A Wyoming statute must be construed to give effect to the Legislature's intent in enacting the statute. *Parker Land & Cattle Co. v. Wyo. Game & Fish Comm'n*, 845 P.2d 1040, 1042, 1044 (Wyo. 1993). One looks first to the plain language of the statute. *Chevron, U.S.A., Inc. v. State*, 918 P.2d 980, 984 (Wyo. 1996). Should the statute's plain language be ambiguous, general rules of statutory construction must be used to ascertain legislative intent. *Parker*, 845 P.2d at 1044. Courts find a statute to be ambiguous if the statutory language permits more than one plausible construction. *Pinther v. State Dept. of Admin. & Inf.*, 866 P.2d 1300, 1303 (Wyo. 1994); *Cf. Enron Oil & Gas v. Dept. of Revenue*, 820 P.2d 977, 982 (Wyo. 1991) (differing interpretations must be credible).

The Code applies only to "consumer credit transactions," which term is not defined specifically. Given the Code's structure and the language used in Wyo. Stat. § 40-14-120, a consumer credit transaction is one involving a consumer credit sale, a consumer lease or a consumer loan.

In the Code, the Legislature identified six specific charges a creditor may assess: application fees (Wyo. Stat. § 40-14-309(b)), service or finance charges (Wyo. Stat. § 40-14-212, 310, 348, 360 & 363), specified additional charges (Wyo. Stat. § 40-14-213, 311), delinquency charges (Wyo. Stat. § 40-14-214, 312), deferral charges (Wyo. Stat. § 40-14-215, 313), and limited collection charges (Wyo. Stat. 40-14-236, 244, 247, 248-249, 334-336, 338, 340, 353, 504 & 505). Under the Code a creditor is allowed to impose a fee only if it is within one of these six categories. Conversely, if a fee is not within a permitted category, then the creditor may not require the consumer to pay it. This conclusion follows from the rule of statutory interpretation that, generally, where a statute enumerates the subjects or things on which it is to operate, it is construed as excluding from its effect all those not expressly mentioned. *City of Cheyenne v. Huitt*, 844 P.2d 1102, 1104 (Wyo. 1993). By enumerating these specific allowable charges, the Legislature excluded all others.

EXHIBIT I                                                                                          Page 3 of 8

Wyoming Collection Agency Board
October 6, 1999
Page 4 of 8

The answer to your inquiry hinges on whether a collection agency's commission is within one of the six categories of allowable charges under the Code. Clearly the commission is not an application fee or a service or finance charge. Neither is it among the specified additional charges allowed under the Code. It then must be a default charge to be allowable. The Code specifies that "the agreement with respect to a consumer credit transaction may not provide for charges as a result of default by the consumer other than those authorized by" the Code. (Wyo. Stat. § 40-14-248, 336).

The Code authorizes a creditor to assess a particular default charge only if it is within any of three categories: delinquency charges, deferral charges and limited collection charges. Delinquency charges are those that a creditor assesses for payments that are more than ten days past-due. (Wyo Stat. § 40-14-214(a), 312(a)). Deferral charges are those that a creditor assesses to allow the consumer to pay a scheduled installment at a later date. (Wyo. Stat. § 40-14-215(a), 313(a)).

The Code allows limited collection charges of varying kinds, which may be imposed on a consumer depending on the type of consumer credit transaction involved. In a consumer credit sale, a consumer lease or a general consumer loan, a creditor may collect sums advanced to protect the collateral securing the transaction (Wyo. Stat. § 40-14-219, 317(a)), sums paid to outside legal counsel for reasonable, post-default attorney's fees (Wyo. Stat. § 40-14-247, 335), and sums paid as reasonable expenses incurred in realizing on a security interest (Wyo. Stat. § 40-14-248, 336). In a supervised loan (a special kind of consumer loan), the same charges may be collected, except that attorney's fees are not allowed on loans over $1,000 (Wyo. Stat. § 40-14-353). In a pawn transaction and a post-dated check or similar arrangement (both being special kinds of consumer loans), the creditor may collect no charges, default or otherwise, other than its finance charge (Wyo. Stat. § 40-14-360(a), 363(a)).

The collection agency's commission is neither a delinquency charge nor a deferral charge. It is also not attorney's fees or expenses incurred in realizing on a security interest or in protecting collateral. Because the collection agency's commission is not an allowed collection charge, it is also not an allowed default charge. As such, the collection agency's commission may not be claimed or collected from the consumer.

This reasoning is not limited to a collection agency's commissions. It also applies to any other default charge that is not specifically allowed under the Code. Perhaps the most common default charge arises in collection of so-called "bad" checks. If the check is tendered as payment under a consumer credit transaction, the creditor may not collect the statutory damages provided in Wyo. Stat. § 1-1-115. This is because they are default charges, i.e., imposed on the consumer due to its failure to pay its debt when due, and are not specifically allowed under the Code. When statutes that relate to the same subject are in conflict, they must be

EXHIBIT I                                                                                           Page 4 of 8

Wyoming Collection Agency Board
October 6, 1999
Page 5 of 8

harmonized, when possible. In such circumstances, the statutes should be interpreted and construed so that the statutes are given as full effect as possible, giving effect to every word, clause and sentence, see *Chevron*, 918 P.2d at 984; *State Dept. of Revenue & Tax'n v. Pacificorp*, 872 P.2d 1163, 1166 (Wyo. 1994), and as part of a general and uniform system of jurisprudence, see *Pinther*, 866 P.2d at 1303; *Parker*, 845 P.2d at 1044. The Wyoming Supreme Court has favored harmonizing conflicting statutes by giving effect to the more specific statute. *Stauffer Chem. Co. v. Curry*, 778 P.2d 1083, 1093 (Wyo. 1989); *Gerstell v. State ex rel. Dept. of Revenue & Tax'n*, 769 P.2d 389, 394 (Wyo. 1989). Given the Code's listing of allowable default charges, it is much more specific and will control over Wyo. Stat. § 1-1-115.

### QUESTION NO. 2

You secondly inquire whether a collection agency may, on behalf of the creditor, add a charge that is expressly permitted under the debt agreement when the creditor has failed to do so. The Code does not govern a creditor's relationship with its chosen collection agent; that relationship is instead governed by general principles of agency law. Wyo. Stat. § 40-14-103. An "agency" relationship is created when one person manifests his consent to another that the other is to act on his behalf and subject to his control, and the other person consents so to act. Restatement (Second) of Agency § 1 (1958). When the right of control with respect to the other's physical conduct is missing, the person is an independent contractor. *Id.* § 2. It has been noted that "most of the persons known as agents, that is, collection agencies [among others,] are independent contractors ... since they are employed to perform services [but] are not subject to the control or right to control in the performance of the services." *See id.* § 14N, comment a. However, they may fall within the category of agents. Every collection agency operates under some form of agreement or understanding with the creditor.

As agents, any authority that a collection agency has to augment a consumer's debt must be found in the agreement between the creditor and the collection agency. *See id.* § 7, comments b & c. The agreement itself may not have to be in writing to establish the agency relationship or the agent's authority, but if not, it must be found in the conduct of the parties. It is difficult to imagine, however, that a creditor in a consumer credit transaction would delegate to the collection agent any authority over such an important prerogative of the creditor unless it did so expressly and in writing, especially given the detail and complexity in calculating installment payments and interest charges.

EXHIBIT I                                                                 Page 5 of 8

Wyoming Collection Agency Board
October 6, 1999
Page 6 of 8

    Thus, absent authority to augment the creditor's determination of the amount due on a consumer debt, the collection agency may not add charges that the creditor has not imposed. This is not to say that a collection agency is prohibited from pointing out to the creditor that it may be entitled to impose a particular charge. But the collection agency may not, on its own and without the creditor's consent or ratification, impose charges that the creditor has chosen not to impose, whether consciously or due to oversight.

    There is a context where a collection agency might have implied authority to calculate the amount due. When a consumer purchases goods or services by check issued as payment for a cash sale of goods and the check is returned unpaid, the seller may be entitled to certain civil damages specified by statute. (Wyo. Stat. § 1-1-115). Calculating the correct amount of damages due under the statute should be a ministerial, mathematical process. In such cases, the collection agency might have the implied authority to collect more than the face amount of the check.

    Agencies, however, should tread carefully in exercising such authority. In *Johnson v. Statewide Collections, Inc.*, 778 P.2d 93 (Wyo. 1989), a collection agency was collecting on a "bad" check. The Code was not involved in this case as the check was issued as payment for a cash sale of goods. Consequently the only question was whether the charge was "permitted by law." Under the "bad" check statute, the holder of the check was specifically authorized to impose the surcharge. In computing the amount due under Wyo. Stat. § 1-1-115, the collection agency incorrectly doubled the statutory surcharge. The collection agency admitted the error, but claimed that it was an inadvertent and bona fide error. The Court determined that the collection agency had failed to prove this defense and therefore ruled that, by adding amounts not authorized by agreement or statute, the collection agency had violated the federal Fair Debt Collection Practices Act ("FDCPA"). Clearly where a collection agency acts on implied authority to calculate the amount of the creditor's claim, it must do so carefully and correctly.

    Federal consumer protection law further supports the conclusion that a collection agency generally may not add to the debt. It does so by requiring the agent to verify the amount of a consumer debt with the creditor, not determining it on its own. Under the FDCPA, a debtor is entitled to dispute the amount of debt owed. If the amount is disputed, the collection agency must "obtain verification of the debt" and, until the debt is so verified, must cease all collection efforts. 15 U.S.C. § 1692g(b).

**EXHIBIT I**　　　　　　　　　　　　　　　　　　　　　　　　　　**Page 6 of 8**

The courts do not appear to have addressed from whom the verification must be obtained, only that the debt collector must obtain it from someone. For example, in *Statewide, supra,* the Wyoming Supreme Court held that "[t]he burden is on the debt collector to demand adequate verification so that it can comply with [15 U.S.C. § 1692g]. The failure to do so by [the debt collector], in this instance, subjects it to the sanctions provided under 15 U.S.C. § 1692k."(*Statewide, supra* at 100-01). The Court ruled that the collection agency was liable for failing to obtain verification from the creditor, even though it had requested it. The Court specifically noted that obtaining a copy of the "bad" check is not sufficient verification. It follows that a collection agency may not add fees that the creditor cannot verify as part of the amount due under the debt.

### *QUESTION NO. 3.*

Your final inquiry is whether Section 11(a) of Chapter 4 of the Board's Regulations conflicts with the Code. Whether a conflict exists will depend on how one interprets Section 11(a). If Section 11(a) would allow a collection agency to collect a fee only if it is allowed under the Code, then there is no conflict. As noted above, courts favor harmonizing conflicting provisions by giving effect to the more specific provision. Given the Code's specific listing of allowable charges, it is much more specific and will control over Section 11(a), but this applies only if the provisions are in actual conflict.

Section 11(a) is taken nearly verbatim from section 1692f(1) of the FDCPA. It provides that a collection agency may not use unfair or unconscionable means to collect or attempt to collect any debt. Rules and Regulations of the Collection Agency Board ch. 4, § 11 (effective June 26, 1997). Among the proscribed activities is the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Generally, when a state administrative agency adopts a rule that is identical to a federal statute, judicial interpretations of the federal statute provide persuasive authority for interpreting the analogous state provision. *Cf.* 2B N.J. Singer, *Statutes & Statutory Construction* § 52.02 (5th ed. 1992 & Cum. Supp. 1999). One federal district court perfectly summarized the operation of section 1691(f)(1):

> [T]he agreement creating the debt need not expressly authorize [a] fee if state law affirmatively permits [the] fee even if not specified in the agreement. However, the agreement must expressly authorize the fee if state law permits such a fee only if specified in the agreement. And no such fee may be collected even if provided in the agreement if state law prohibits [the] fee in addition to the principal obligation *because a contract can never impose charges that are*

**EXHIBIT I**         **Page 7 of 8**

>  prohibited by state law. *West v. Costen*, 558 F.Supp. 564, 582 (W.D.Va. 1983) (italics added).

The Board's interpretation and implementation of Section 11(a) should be consistent with the court's cogent summary cited above. Under this interpretation, there can be no conflict with the Code.

## CONCLUSION

A collection agency, in collecting on a debt arising out of a consumer credit transaction, may not collect from a consumer any portion of its commission or other fees for collection of the debt.

Generally, unless the collection agency agreement specifically provides otherwise, the creditor must determine the amount of the debt to be collected, not the collection agent. The creditor, however, may assess any charge that is allowed under the contract and also allowed under the Code and other applicable law.

Section 11(a) of Chapter 4 of the Regulations is drawn nearly verbatim from the federal Fair Debt Collection Practices Act and should be interpreted consistently with its federal counterpart. Thus, there is no conflict between the regulation and the Code.

Gay Woodhouse
Attorney General

Rowena L. Heckert
Deputy Attorney General

/s/ Drake D. Hill
Senior Assistant Attorney General

P. Olen Snider, Jr.
Assistant Attorney General

EXHIBIT I                                                                 Page 8 of 8